

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00729-CV

**CITY OF RIO GRANDE CITY, TEXAS**, and Joel Villarreal, Herman R. Garza III, Arcadio J. Salinas III, Rey Ramirez, and Dave Jones in their Official and Individual Capacities; Grande Garbage Collection Co., L.L.C.; and Patricio Hernandez,
Appellants

v.

**BFI WASTE SERVICES OF TEXAS, LP** d/b/a Allied Waste Services of Rio Grande Valley,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. DC-15-604
Honorable Migdalia Lopez, Judge Presiding

Opinion by: Jason Pulliam, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Jason Pulliam, Justice

Delivered and Filed: September 21, 2016

AFFIRMED IN PART, REVERSED IN PART

Appellants, City of Rio Grande City, Texas ("City") and its elected officials in their official and individual capacities; Grande Garbage Collection Co., L.L.C. ("Grande"); and Patricio Hernandez, individually (collectively the "City Parties"), appeal the trial court's orders denying their joint plea to the jurisdiction and granting a temporary injunction in favor of BFI Waste

Services of Texas, LP d/b/a Allied Waste Services of Rio Grande Valley ("Allied").[1] The City Parties raise four issues on appeal: (1) the trial court's first temporary injunction order, dated November 10, 2015, is void and has been superseded; (2) this court should reconsider its April 4, 2016 order; (3) Allied's claims are barred, at least in part, by sovereign immunity; and (4) the trial court abused its discretion by granting the February 19, 2016 temporary injunction. The trial court's order denying Grande and Hernandez's plea to the jurisdiction is affirmed; the trial court's order denying the City and City officials' plea to the jurisdiction is affirmed in part and reversed in part. The trial court's order granting the temporary injunction is affirmed.

## BACKGROUND

In 2011, Allied entered into a contract with the City to be the exclusive provider of solid waste disposal services within the City's limits through September 2018. In April 2015, the City notified Allied that it had failed to perform its obligations under the contract and also improperly billed the City for services Allied did not perform. The City demanded Allied cure the alleged material breaches. In May 2015, Allied responded to the City's notice of the breaches. In September 2015, the City alleged Allied failed to cure the breaches and terminated Allied's contract. The City then contracted with Grande for solid waste disposal services.

Allied filed suit against the City on October 8, 2015, asserting breach of contract and constitutional claims and requesting a temporary restraining order ("TRO") or temporary injunction. On October 12, 2015, the trial court signed a TRO prohibiting the City and its agents from taking actions inconsistent with Allied's contract rights or prohibiting Allied from providing services. Grande received actual notice of the TRO on October 16, 2015.

---

[1] Although the City Parties — with the exception of the City officials in their individual capacities — filed one joint plea to the jurisdiction, the trial court issued two orders: one addressing the City and the City officials in their official capacities and the second addressing Grande and Hernandez.

On October 20, 2015, the City answered Allied's claims and filed counterclaims against Allied, seeking monetary damages for breach of contract, quantum meruit, promissory estoppel, and fraud. The trial court began hearing evidence in a temporary injunction hearing on October 22, 2015. The hearing was recessed to November 5, 2015. On October 30, 2015, prior to the conclusion of the temporary injunction hearing, the City removed the case to federal court. The federal court remanded the case to the trial court on November 9, 2015, and the following day, the trial court signed an order granting a temporary injunction. The City Parties filed a notice of appeal seeking to appeal the trial court's order.

The City Parties removed to federal court on November 10, 2015. While the case was removed, the City passed a resolution at a November 11, 2015 meeting to terminate Allied's contract. On November 12, 2015, the federal court remanded the case to the trial court and sanctioned the City for improper removal.

On January 22, 2016, Allied filed an amended petition for declaratory judgment, injunctive relief and damages, as well as an application for a temporary injunction. The trial court set a hearing on the temporary injunction for February 19, 2016. On February 17, 2016, the City Parties, except the City officials in their individual capacities, filed a joint plea to the jurisdiction and response to Allied's second application for injunctive relief. On February 19, 2016, the trial court held a hearing on Allied's application for a temporary injunction. During that hearing, the trial court advised the parties it would not rule on the plea to the jurisdiction at that time, but would hear it later, noting Allied had not been provided sufficient time to respond. Following the hearing, the trial court granted a second temporary injunction.

Thereafter, the City Parties timely amended the notice of appeal to also challenge the trial court's order granting the second temporary injunction. During the pendency of this appeal, the trial court held a hearing on the City Parties' joint plea to the jurisdiction on May 10, 2016. On

May 26, 2016, the trial court issued orders denying the joint plea to the jurisdiction. Thereafter, on May 27, 2016, the City Parties filed an unopposed motion requesting this court review the denial of their pleas to the jurisdiction in the current appeal. *See* TEX. R. APP. P. 29.6. This court granted the motion on June 7, 2016.

## SUBJECT MATTER JURISDICTION

In their third issue, the City Parties contend the trial court erred by denying their plea to the jurisdiction. The City Parties argue Allied's claims are barred by governmental immunity and should be dismissed.

### Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). The question of whether a court has subject matter jurisdiction is a matter of law; accordingly, this court reviews de novo the trial court's ruling on a plea to the jurisdiction based on governmental immunity. *Hoff v. Nueces Cty.*, 153 S.W.3d 45, 48 (Tex. 2004); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff bears the burden of alleging facts which affirmatively show the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). If a plea to the jurisdiction challenges the existence of jurisdictional facts, this court considers pertinent evidence in the record when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. The allegations in the petition are taken as true and construed in favor of the pleader. *Id.* at 228. If the evidence raises a fact issue concerning the existence of jurisdiction, then the plea must be denied. *Id.* at 227-28. However, if the evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

If a plaintiff fails to plead sufficient facts affirmatively demonstrating the trial court's jurisdiction, but the pleadings do not affirmatively demonstrate incurable jurisdictional defects, the issue is one of pleading sufficiency and the plaintiff should be allowed the opportunity to amend. *Id*. at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, however, the trial court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id*. at 227.

### Whether Governmental Immunity Extends to Grande and Hernandez

The City Parties contend the City's governmental immunity extends to Grande as the City's chosen contractor and to Hernandez as Grande's owner ("the Grande Defendants"). The City Parties argue extending immunity to the Grande Defendants furthers the purposes of the City: (1) revising existing agreements in the public's favor in response to changing conditions; (2) being able to work on the public's behalf without being bound by or accountable for the policy reasons underlying long-term contracts negotiated by predecessors; (3) and protecting the public's fiscal security.

Governmental immunity does not extend to private contractors hired on a government contract and exercising independent discretion for the actions allegedly causing the plaintiff's loss, for which they were sued. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 124 (Tex. 2015). In *Brown & Gay*, the Texas Supreme Court noted governmental immunity was designed to guard against "unforeseen expenditures" associated with the government defending lawsuits and paying judgments "that could hamper government functions" by diverting funds from their allocated purposes. *Id*. at 123. Immunizing a private contractor does not further this rationale. *Id*. "Even if holding a private party liable for its own improvident actions in performing a government contract indirectly leads to higher overall costs to government entities in engaging private contracts, those costs will be reflected in the negotiated contract price." *Id*.

Allied alleged in its pleadings that the Grande Defendants willfully and intentionally interfered with the contract between Allied and the City. Allied further alleged the Grande Defendants solicited or received official information that had not been made public with the intention of obtaining the contract for solid waste disposal with the City. Additionally, Allied alleged the Grande Defendants engaged in a civil conspiracy with the City's elected officials with the goal of terminating Allied's contract with the City. Further, Allied alleged the Grande Defendants picked up, moved, and/or impounded its trash bins and then refused to return them. Finally, Allied alleged the Grande Defendants, in conjunction with the City, abused the legal process to Allied's detriment in order to avoid the trial court's jurisdiction.

The Grande Defendants contracted with the City following the City's termination of Allied's contract to provide solid waste disposal services. The events that form the basis of Allied's allegations against the Grande Defendants were not actions the Grande Defendants took within the scope of their contract with the City for solid waste disposal services. Extending immunity to the Grande Defendants for the commission of acts not within the scope of contracted services with the City and for which the Grande Defendants exercised independent discretion does not further the rationale supporting governmental immunity. *See Brown and Gay*, 461 S.W.3d at 123.

Consequently, the Grande Defendants are not entitled to derivative governmental immunity, and the trial court retains jurisdiction over the claims against the Grande Defendants. That portion of the City Parties' third issue contending the trial court erred by denying the plea to the jurisdiction relating to Hernandez and Grande is overruled.

### Whether Governmental Immunity Extends to the City Officials

A government official may be sued in his official capacity, in an individual capacity, or in both capacities. *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex. App.—Austin 2007, no pet.). A

suit against a government official in his official capacity is essentially a suit against the governmental unit the person works for, rather than a suit against the individual. *Id*. A suit against a government official in his individual capacity seeks to impose personal liability on the individual. *Id*; *see City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 703 (Tex. App.—Austin 2005, no pet.).

The City Parties contend Allied's petition does not specify the capacity in which the City officials are sued and argue this court should look to the course of the proceedings to determine the nature of the liability. *See Nueces Cty. v. Ferguson*, 17 S.W.3d 205, 215 (Tex. App.—Corpus Christi 2002, no pet.). Allied's amended petition clearly brings suit against the City officials in both their official and individual capacities. However, the City officials, in their individual capacities, did not join the plea to the jurisdiction and response to Allied's second application for temporary injunction. Additionally, during the hearing on the plea to the jurisdiction, counsel for the City officials acknowledged the officials in their individual capacities could not claim governmental immunity.

Government officers and employees sued in their official capacity may raise the defense of governmental immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009). However, under the *ultra vires* exception to governmental immunity, certain claims may be brought against a government official. *Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011). To assert an *ultra vires* claim, the plaintiff must allege, and ultimately prove, the official acted without legal authority or failed to perform a purely ministerial act. *Southwestern Bell Tel., L.P. v. Emmet*, 459 S.W.3d 578, 587 (Tex. 2015); *Heinrich*, 284 S.W.3d at 372.

Allied alleged the City officials acted *ultra vires* by violating the Texas Open Meetings Act, impermissibly sharing non-public official information, engaging in a conspiracy, and interfering with Allied's contractual interests. Although the City Parties argue the City officials

acted within their discretion, this court must take Allied's allegations as true and construe the pleadings in Allied's favor. Accordingly, without deciding in this appeal whether Allied can ultimately prove its *ultra vires* allegations, this court concludes Allied's allegations are sufficient to allege the City officials acted outside their allowable exercise of discretion and without legal authority, thus waiving immunity. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (plea to jurisdiction should be decided without looking into the merits of a case).

### City's Immunity from Claims

Absent waiver, political subdivisions of the state, including municipalities, are entitled to immunity from lawsuits. *See Reata Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). If the Legislature has not expressly waived immunity from suit, the State retains immunity even if its liability is not disputed. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). To determine whether the trial court erred by denying the plea to the jurisdiction with regard to the claims against the City, this court must separately consider each of the claims alleged and whether the City's immunity as to each was waived.

*A. Breach of Contract Claims and Intentional Torts*

The Local Government Contract Claims Act ("the Act") waives a local governmental entity's immunity from suit in certain breach of contract claims. TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2015); *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 106-07 (Tex. 2014); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 345 (Tex. 2006) (including a municipality in the definition of local governmental entity). Section 271.152 states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152.  A "contract subject to this subchapter" includes "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 271.152(2)(A).  The parties do not dispute the contract between Allied and the City through which Allied was the exclusive provider of solid waste collection and disposal services within the Rio Grande City city limits qualifies as a "contract subject to this subchapter."  *See id.*

The "terms and conditions of this subchapter" referred to in section 271.152 include the limitations on awards set out in section 271.153:

> (a) Except as provided by Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of contract subject to this subchapter is limited to the following:
>
>> (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;
>>
>> (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;
>>
>> (3) reasonable and necessary attorney's fees that are equitable and just; and
>>
>> (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.
>
> (b) Damages awarded in an adjudication brought against a local government entity arising under a contract subject to this subchapter may not include:
>
>> (1) consequential damages, except as expressly allowed under Subsection (a)(1);
>>
>> (2) exemplary damages; or
>>
>> (3) damages for unabsorbed home office overhead.

(c) Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local government entity for breach of a contract described by Section 271.151(2)(B).

*Id.* § 271.153(b)(1); *Zachry Constr.*, 449 S.W.3d at 106-07.

An appellate court cannot construe a statute to waive immunity "unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034 (West 2015); *see Tooke*, 197 S.W.3d at 328-29. If a statute seeks to waive immunity, it "must do so beyond doubt." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). In *Zachry Construction*, the Texas Supreme Court considered whether "the Act's limitations on recovery help define and restrict the scope of waiver of immunity." *Zachry Constr.*, 449 S.W.3d at 105. The court stated section 271.152 must be read as: "'A local governmental entity … waives sovereign immunity to suit … subject to the terms and conditions' of the Act." *Id.* at 108. "Section 271.153's limitations on recovery are incorporated into section 271.152 by its last 'subject to' clause and are thereby conditions on the Act's waiver of immunity." *Id.* at 109. The court concluded "the Act does not waive immunity from suit on a claim for damages not recoverable under section 271.153." *Id.* at 110. Therefore, under *Zachry Construction*, in order for the trial court to have jurisdiction over a contract claim asserted against a local governmental entity, the plaintiff must establish "a demand for certain kinds of damages" as limited by section 271.153. *Id.* at 109. Waiver of immunity under the Act "require[s] a showing of a substantial claim that meets the Act's conditions," which requires "the claimant must plead facts with some evidentiary support that constitute a claim for which immunity is waived." *Id.* at 109, 110.

Allied requests the "balance due and owed" under the contract, which is recoverable under section 271.153. Allied also requests additional damages, including actual and consequential damages, as well as pre- and post- judgment interest, costs of court, reasonable and necessary attorneys' fees, injunctive relief, and declaratory judgment. Some of these additional damages are

not recoverable under section 271.153. For this reason, the City contends Allied failed to plead a valid waiver of immunity under the Local Government Code and argues the trial court does not have jurisdiction to award Allied damages for its breach of contract claim beyond those expressly permitted by section 271.153.

Allied responds that the City waived sovereign immunity from breach of contract damages, regardless of the limitations imposed by section 271.153 by filing counterclaims for breach of contract, quantum meruit, promissory estoppel, and fraud. *See Reata*, 197 S.W.3d 371 (Tex. 2006). In *Reata*, the Texas Supreme Court held that when a governmental entity asserts its own affirmative claims for monetary relief, sovereign immunity does not bar adverse parties from asserting, "as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Id.* at 376-77.

Applying *Reata*, this court must determine if Allied's claims for breach of contract damages are sufficiently related to the City's counterclaims so that the City's immunity is waived. Allied also asserts the City waived immunity from the intentional tort claims raised by Allied by filing its counterclaims. Therefore, this court must also determine whether Allied's intentional tort claims are sufficiently related to the City's counterclaims so as to waive the City's immunity.

"In common usage, the term 'germane' means 'closely akin,' 'being at once relevant and appropriate,' 'closely or significantly related,' 'relevant,' and 'pertinent.'" *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *City of Dallas v. Redbird Dev. Co.*, 143 S.W.3d 375, 381 (Tex. App.—Dallas 2004, no pet.); *Merriam-Webster's Collegiate Dictionary* 525 (11th ed. 2003); *Random House Webster's Unabridged Dictionary* 800 (2d ed. 2001)). "In common usage, the term 'connected' means 'united, joined or linked' and 'having parts or elements logically linked together.'" *Id.* (quoting *Merriam-Webster's*

*Collegiate Dictionary* 525 (11th ed. 2003); *Random House Webster's Unabridged Dictionary* 800 (2d ed. 2001)).

Allied's breach of contract claim and the City's breach of contract counterclaim arise from the same facts and controversy. Both parties request damages stemming from the other's purported breach of the same contract, and the claims rely on resolution of similar disputed facts. Similarly, Allied's tortious interference, conspiracy, abuse of office, misuse of official information, and restraint of trade claims rely on the resolution of disputed facts surrounding the parties' fulfillment or non-fulfillment of the same contract. The resolution of the parties' rights with regard to these claims depends on facts pertinent to the parties' conduct regarding the contract. Thus, Allied's claims for breach of contract, tortious interference, conspiracy, abuse of office, misuse of official information, and restraint of trade are sufficiently related to the City's affirmative counterclaims. Accordingly, this court concludes the trial court has jurisdiction to hear these claims.

*B. Allied's Claim for Declaratory Judgment*

In its pleadings, Allied seeks declarations that: (1) Allied and the City entered into a valid and enforceable contract through which Allied possessed the exclusive right to provide solid waste collection and disposal within Rio Grande City; (2) the City terminated Allied without cause and failed to follow the contract's termination procedure; (3) the contract between Allied and the City remains in full force; (4) the contract between Grande and the City is void; and (5) Grande must stop providing solid waste collection services within the City's boundaries during the term of the contract between the City and Allied.

The Uniform Declaratory Judgment Act ("UDJA") is not a general waiver of governmental immunity. TEX. CIV. PRAC. & REM. CODE ANN. § 37.001-.011 (West 2015); *Tex. Parks and Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *Heinrich*, 284 S.W.3d at 373 n.6. However, the UDJA does provide a narrow waiver of immunity for claims challenging the

validity of statutes. *Sawyer*, 354 S.W.3d at 388. "[T]he state may be a proper party to a declaratory judgment action that challenges the validity of a statute." *Sefzik*, 355 S.W.3d at 622. The UDJA does not enlarge the trial court's jurisdiction, and a litigant's request for declaratory relief does not confer jurisdiction on a court or change a suit's underlying nature. *IT-Davy*, 74 S.W.3d at 855.

In requesting declaratory judgment, Allied does not challenge the validity of a statute or city ordinance. Instead, Allied seeks declarations of its rights under the contract between Allied and the City. Therefore, to the extent Allied requests declaratory judgment relief, Allied's claims do not fall within the UDJA's narrow waiver of immunity. *Id*. at 621. Although construed in its favor, Allied's pleadings fail to allege facts affirmatively demonstrating the trial court's jurisdiction over the UDJA claims. Accordingly, the trial court's order with respect to Allied's request for declaratory judgment is reversed and Allied's claim for declaratory judgment is dismissed.

## C. *Texas Open Meetings Act Claims*

Within its pleadings, Allied alleged the agendas posted prior to the City's decisions regarding the waste disposal services contract were insufficient under the Texas Open Meetings Act. Allied also alleged the City: (1) provided Grande with information regarding the waste disposal services contract prior to it being made public; (2) failed to provide sufficient notice of negotiations with Grande for the contract in violation of the Texas Open Meetings Act; and (3) improperly conducted deliberations in closed sessions. The City argues that its subsequent actions corrected any alleged open meetings act violations, thus making Allied's claims moot.

The Texas Open Meetings Act ("TOMA") is intended to provide public access to and increase public knowledge of government decision making. *Tex. State Bd. Of Pub. Accountancy v. Bass*, 366 S.W.3d 751, 759 (Tex. App.—Austin 2012, no pet.). TOMA expressly waives governmental immunity to allow interested persons to bring suit against a governmental body to

reverse a prior TOMA violation. *Id*. "If a governmental body illegally deliberates and decides an issue in closed session, repealing the action so that it can be retaken in a later setting does not vindicate the very right protected by TOMA." *City of Farmers Branch v. Ramos*, 235 S.W.3d 462, 469 (Tex. App.—Dallas 2007, no pet.). The City's actions to correct the alleged open meetings act violations do not render Allied's TOMA violations moot.

Construing the pleadings in Allied's favor, this court concludes Allied's pleadings sufficiently alleged TOMA violations. Consequently, the trial court retains jurisdictions over these claims.

### D. Constitutional Violations Claims

Allied alleged the City's actions were not a proper exercise of its police powers and substantially impaired Allied's contractual rights and interests in violation of the contracts clause and due course of law clause of the Texas Constitution. Allied also alleged the City's actions were in violation of the contracts clause and Fourteenth Amendment of the United States Constitution. To prevent interference with its constitutional rights, Allied seeks only injunctive relief.

Governmental immunity does not bar claims for equitable relief alleging a violation of a constitutional provision. *Nueces Cty. v. Ferguson*, 97 S.W.3d 205, 217 (Tex. App.—Corpus Christi 2002, no pet.); *see City of Fort Worth v. Jacobs*, 382 S.W.3d 597, 598-99 (Tex. App.—Fort Worth 2012, pet. dism'd). If an action to declare a violation of constitutional rights is brought solely to obtain a money judgment, the suit is barred by immunity. *El Paso v. Bustillos*, 324 S.W.3d 200, 205 (Tex. App.—El Paso 2010, no pet.). However, the fact that a suit seeking equitable relief might also result in monetary relief does not bar a suit seeking compliance with constitutional provisions. *See id*. at 207.

The Texas Constitution provides in Article 1, section 16 that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX.

CONST. art. I, § 16. Likewise, in Article 1, section 10, the United States Constitution provides that "[n]o State shall … pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10. The City Parties contend Allied has not pleaded the City passed "any law impairing" the obligation of its contract. However, Allied alleged "[t]he actions of the City are specifically directed at and directly abrogate Allied's contractual rights to provide exclusive solid waste services in the corporate limits of the City."

To state a valid due process or due course of law claim, a plaintiff must first allege the existence of a protected right. *NCAA v. Yeo*, 171 S.W.3d 863, 867-68 (Tex. 2005). In this case, Allied alleged a protected and vested right under the contract, which Allied further alleged was impaired by the City defendants' actions of improperly passing resolutions and an ordinance to end the contract. Taking the allegations as true and construing the pleadings in Allied's favor, without addressing the merits of Allied's pleadings, this court concludes Allied has alleged the existence of a protected right and action on the part of the City that impaired Allied's contractual rights. Consequently, the trial court retains jurisdiction over Allied's constitutional violations claims.

*E. Abuse of Process*

On October 30, 2015, before the conclusion of the first temporary injunction hearing, the City and its officials removed the case to federal court. The federal court determined the parties contractually agreed to mandatory venue in Starr County, found the right to remove had been waived, and remanded the case to the trial court on November 9, 2015. At the time of the second removal to federal court, on November 10, 2015, the Grande Defendants had intervened. The federal court again remanded to the trial court and sanctioned the City Parties for improper removal. Allied claimed this was an abuse of process.

Allied's abuse of process claim does not arise from the same facts and controversy as the City's counterclaims discussed above. Therefore, the City's immunity is not waived pursuant to *Reata* for this claim. However, because this is a tort claim, this court must consider whether governmental immunity has been waived through the Texas Tort Claims Act.

The legislature granted a limited waiver of immunity in the Texas Tort Claims Act ("TTCA"), which allows suits to be brought against governmental units in limited circumstances. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The TTCA establishes liability and creates waiver from suit for claims involving government functions and damages (1) arising from operation of a motor-driven vehicle or motor-driven equipment and (2) those caused by a condition or use of tangible personal or real property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2015). Although "solid waste removal, collection, and disposal" is a governmental function, Allied's abuse of process claim does not arise out of the use of a motor vehicle or equipment, or a condition or use of tangible personal or real property. *See id.* § 101.0215(a)(6). As such, Allied's abuse of process claim does not fall within the limited waiver of immunity contained in section 101.021. Thus section 101.021 provides no basis for the trial court to retain jurisdiction over Allied's abuse of process claim.

**Conclusion**

Based on the forgoing reasons, the trial court has jurisdiction over Allied's claims for breach of contract, restraint of trade, civil conspiracy, misuse of official information, abuse of office, tortious interference, violations of the contracts clause and due course of law clause of the Texas Constitution, and violations of the contracts clause and Fourteenth Amendment of the United States Constitution. The trial court does not retain jurisdiction over Allied's claims for abuse of process and declaratory judgment.

Issue three is overruled in part and affirmed in part.

**TEMPORARY INJUNCTION**

In their fourth issue on appeal, the City Parties contend the trial court erred by granting Allied's request for a temporary injunction. Following a hearing on February 19, 2016, the trial court found Allied "plead causes of action against [the City Parties] and will likely be successful on the merits as to its claims against the [City Parties] and further that the City acted unlawfully" when the City: (1) terminated its contract with Allied in violation of the 2011 waste disposal services contract between the City and Allied; (2) terminated its contract with Allied in violation of section 19.00 of the 2011 waste disposal services contract between the City and Allied; (3) terminated its contract with Allied in violation of Section 551.041 of the Texas Government Code; and (4) approved a contract with Grande Garbage without following the requirements of section 551.101 of the Texas Government Code in that the Grande Garbage contract was illegally discussed in closed session absent the required notice.

The trial court found Allied would be irreparably damaged and additionally found "Allied likely has no adequate remedy at law for losses such as consequential damages caused by [the City] or damages for disparagement, loss of business goodwill, loss of reputation and disruption of Allied's business resulting from [the City Parties' actions]." Ultimately, the trial court found no other remedy could fully and adequately preserve Allied's rights and property.

The trial court signed an order enjoining the City Parties from:

a. Taking any action that is inconsistent with Allied's contract rights as the exclusive franchisee for solid waste and disposal services, including but not limited to allowing Grande Garbage Company LLC or another party to provide those same services in the City of Rio Grande;

b. Preventing Allied from providing those services and from taking any other action or inaction interfering with Allied's right to exclusively provide solid waste collection services in the City of Rio Grande and receive payment therefor during the term of the Agreement.

**Standard of Review**

The decision to grant or deny a temporary injunction is within a trial court's sound discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). This court will reverse the trial court's ruling only if the trial court has abused that discretion. *Id.* A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that the decision amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010). This court may not substitute its judgment for that of the trial court. *Butnaru*, 84 S.W.3d at 204. On appeal, this court's review is limited to the validity of the temporary injunction order; this court does not review the merits of the case. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In reviewing an order granting or denying a temporary injunction, this court draws all legitimate inferences from the evidence in a manner most favorable to the trial court's order. *Menna v. Romero*, 48 S.W.3d 247, 252 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.).

**Discussion**

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

If the applicant does not plead a cause of action and present some evidence that supports a probable right of recovery, then a temporary injunction is not proper. *City of San Antonio v. Headwaters Coalition, Inc.*, 381 S.W.3d 543, 550 (Tex. App.—San Antonio 2012, pet. denied). "To show a probable right of recovery, an applicant need not establish that it will finally prevail

in the litigation, but it must, at the very least, present some evidence that, under the applicable rules of law, tends to support its cause of action." *INEOS Grp. Ltd.*, 312 S.W.3d at 848. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. The party seeking an injunction need not show a probable right to relief and injury on each of its claims; establishing the right to recover on one is sufficient to justify sustaining the temporary injunction. *Brammer v. K.B. Home Lone Star, L.P.*, 114 S.W.3d 101, 110 (Tex. App.—Austin 2003, no pet.).

### *Texas Open Meetings Act Violations*

Allied alleged the City violated TOMA when the City took action to terminate Allied's contract and subsequently negotiate and contract with Grande for solid waste disposal services. Allied alleged the City failed to provide the proper notice under TOMA for actions taken during the September 9 and 28, 2015 City Commission meetings and also improperly agreed upon action during closed executive session.

The City posted the agenda for its September 9, 2015 meeting on September 4, 2015. The agenda included a line item 3A, which read: Second Reading and adoption of Ordinance No. 2015-8 amending Ordinance 2007-12 Municipal Solid Waste. The agenda provided no further explanation of the ordinances or the matter to be discussed. In contrast, other agenda line items provide more detail about the subject matter. For example, item 3C reads: First Reading and approval of Ordinance No. 2015-10 establishing an ad valorem tax and levying a maintenance and operation tax rate and an interest and sinking tax rate for the tax year ending 2015.

Elisa Beas, the Deputy City Manager, agreed the posted agenda did not include a line item regarding open session consideration of Allied's contract. Beas additionally agreed during her testimony that the agenda did not include a line item addressing negotiation of a solid waste disposal services contract with Grande.

The agenda for the September 9, 2015 meeting did include a line item referring to Allied in relation to an executive session "consultation with attorney," pursuant to Government Code section 551.071. *See* TEX. GOV'T CODE ANN. § 551.071 (West 2015). Item 7D reads: Discussion and possible action regarding notice to Allied Waste through Resolution No. 2015-9 and response from Allied Waste. Beas confirmed Item 7D does not specifically indicate terminating Allied's contract would be considered during the executive session.

The September 9, 2015 meeting minutes show the City took action in open session to terminate Allied's contract immediately after returning from the executive session. Additionally, at that meeting, Beas was directed to negotiate with Hernandez for the purpose of obtaining a contract with Grande for solid waste disposal services.

The record contains two different agendas for the September 28, 2015 meeting. In the first agenda, which the City states is a draft, line item 3D under the executive session heading reads: Discussion and possible action regarding notice to Allied Waste through Resolution No. 2015-9 and response from Allied Waste. The second agenda, which the City states is the final version, includes an additional section heading, City Manager's Report, under which line item 3A reads: Discussion and possible action to approve an agreement with Grande Garbage Collection for emergency solid waste residential and commercial services. The minutes for the September 28, 2015 meeting indicate the emergency contract with Grande was discussed in the closed executive session. When the open session reconvened, the commissioners moved to "approve as discussed in executive session."

TOMA requires a governmental body to conduct its business in meetings that are open to the public and to "give written notice of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE ANN. §§ 551.002, 551.041 (West 2015); *Cox Enters., Inc. v. Bd. Of Trustees of Austin Indep. Sch. Dist.*, 706 S.W.2d 959, 958 (Tex. 1986). Exceptions

to this open meeting requirement include private consultations with the governmental body's attorney about pending or contemplated litigation, a settlement offer, or "a matter in which the duty of the attorney to the governmental body under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas clearly conflicts with this chapter." TEX. GOV'T CODE ANN. § 551.071; *Cox Enters.*, 706 S.W.2d at 958. This exception is an affirmative defense on which the governmental entity bears the burden of proof. *Olympic Waste Servs. v. City of Grand Saline*, 204 S.W.3d 496, 504 (Tex. App.—Tyler 2000, no pet.).

In their brief, the City Parties rely on the attorney consultation exception to open meetings regarding the executive sessions. With respect to the September 9, 2015 executive session, the City Parties argue Allied's attorneys had been involved and sending letters of complaint, which constituted a "very real threat of litigation" thus supporting the need for discussion in closed executive session. Beas testified that when "attorneys enter into discussions and meetings, we assume that it will go into litigation." With respect to the September 28, 2015 executive session, the City Parties argue the reason for the closed discussion – consultation regarding contractual terms and bargaining – is appropriate under subsections (1)(A) and (2) of Government Code 551.071.

The record before this court does not contain evidence of actual threat of litigation, when the threat was made, or its scope. Given that the exception is an affirmative defense, it was the City Parties' burden to conclusively show its application, which this court concludes they have not done with regard to the September 9, 2015 executive session.

The test for the adequacy of a meeting notice under TOMA is whether the notice is sufficiently specific to alert the general public to the topic under consideration. *Odessa Tex. Sheriff's Posse, Inc., v. Ector Cty*, 215 S.W.3d 458, 472 (Tex. App.—Eastland 2006, pet. denied). Although "it is not necessary to state all of the consequences which may flow from consideration

of the topic" or to divulge strategy regarding specific litigation, the notice must still be sufficiently specific. *Cox Enters.*, 706 S.W.2d at 958-59. For example, broad statements that a governmental body will consider "litigation" or "personnel" in closed sessions is not sufficient to provide notice the government will consider a "major desegregation lawsuit" or select a new school superintendent during the closed session. *Id.*

The agenda for the September 9, 2015 meeting stated only that the commissioners would discuss and take possible action regarding the notice to Allied. Notices must include more specific information when the issue is one of special interest to the public. *Id.* The evidence and testimony presented during the injunction hearing demonstrated the public expressed significant concern and interest in the issues surrounding the solid waste disposal services within the city. Because public interest was elevated, the City was required to provide "full and adequate" notice of the subjects to be discussed. *Salazar v. Gallardo*, 57 S.W.3d 629, 634 (Tex. App.—Corpus Christi 2001, no pet.). Comparing the notice given against the action taken by the City, this court cannot conclude the evidence presented does not reasonably support the trial court's conclusion Allied has a probable right to recovery.

The City Parties contend Allied failed to demonstrate irreparable injury and inadequate remedy. Allied's divisional general manager testified regarding the intangible losses suffered by Allied, such as loss of reputation and good will. The divisional general manager testified Allied maintains involvement in the local community to establish goodwill and a positive reputation. According to the divisional general manager, the public's concern regarding the solid waste disposal services contract was detrimental to maintaining goodwill and a good reputation. Additionally, Beas testified Allied's business operations were interrupted. Beas agreed confusion over the solid waste disposal services contract could harm Allied's business. Finally, the divisional general manager testified it was not possible to monetarily valuate loss of reputation.

Threatened injury to a business's reputation is an intangible injury and frequently the basis for temporary injunctive relief. *Intercontinental Terminals Co., LLC v. Vopak North America, Inc.*, 354 S.W.3d 887, 895 (Tex. App.—Houston [1st Dist.] 2011, no pet.). An adequate remedy is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 353. This court concludes the evidence presented reasonably supports the trial court's conclusion Allied was irreparably harmed and no other remedy could adequately preserve Allied's rights and property.

Finally, the City Parties urge the temporary injunction does not preserve the status quo, but rather alters the status quo because the City had already terminated Allied's contract at the time Allied filed its petition. The appropriate status quo to be preserved is the last actual, peaceable, non-contested status preceding the pending controversy. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975) (superseded by statute on other grounds).

In this case, the status quo to be preserved is the status as it was before the City terminated Allied's contract as termination of Allied's contract is the basis of the pending controversy. No determination has been made regarding the propriety of the City's actions. Rather, the trial court has restored conditions to the point that will protect the interests of the parties until the pending controversy is resolved. This court concludes the temporary injunction preserves the status quo of the subject matter of this case until it can be tried on the merits.

Viewing the evidence in the light most favorable to the trial court's order, and indulging every reasonable inference in its favor, this court concludes he trial court did not abuse its discretion by determining Allied showed a probable right to recovery and a probable irreparable injury for which there was no adequate remedy at law. The fourth issue is overruled.

## NOVEMBER 10, 2015 INJUNCTION

The City Parties, in their list of issues presented, contend the November 10, 2015 temporary injunction is void because it lacked a trial date and has been superseded.

Rule 38.1(i) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1. An appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). The failure to provide appropriate record citations or a substantive analysis waives an appellate issue. *Gonzalez v. VATR Const. L.L.C.*, 418 S.W.3d 777, 783 (Tex. App.—Dallas 2013, no pet.). In other words, appellants must provide a discussion of facts and the authorities relied upon as may be required to maintain the point at issue. *See Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

In this case, although the City Parties list a complaint regarding the first temporary injunction as an issue presented, their brief does not contain a discussion of facts or substantive analysis in regard to this issue. Because the City Parties fail to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record," their first issue has not been preserved for appellate review. TEX. R. APP. P. 38.1.

Issue one is overruled.

## APRIL 4, 2016 ORDER

In their second issue presented, the City Parties contend "[t]his Court should reconsider its April 4, 2016 Order, and determine the trial court impliedly rul[ed] on Appellants' plea to the jurisdiction."

On February 26, 2016, the City Parties filed motions in this court, arguing in part the trial court impliedly overruled the plea to the jurisdiction when it granted the temporary injunction. In

an opinion dated April 4, 2016, this court concluded the trial court's order granting the temporary injunction did not rule on the jurisdictional questions presented in the plea to the jurisdiction. *See City of Rio Grande City v. BFI Waste Servs. of Tex., LP*, No. 04-15-00729-CV, WL1298117 (Tex. App.—San Antonio April 4, 2016, no pet.).

On May 26, 2016, the trial court issued two orders that explicitly denied the City Parties' plea to the jurisdiction. Therefore, the issue of whether the trial court impliedly ruled on the plea to the jurisdiction is moot.

## CONCLUSION

Based on the forgoing reasons, the trial court's order denying Grande and Hernandez's plea to the jurisdiction is affirmed. The trial court's order denying the City and City officials' plea to the jurisdiction is affirmed in part and reversed and rendered in part. Allied's claims of abuse of process and for declaratory judgment are dismissed. The trial court's order granting Allied's request for a temporary injunction is affirmed.

Jason Pulliam, Justice